2022 IL App (1st) 201194
No. 1-20-1194
Order entered April 18, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| CHARLES P. THOMAS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16 CH 8346 |
| D1 SPORTS HOLDING, LLC, | ) ) ) | The Honorable Pamela McLean Meyerson, |
| Defendant-Appellant. | ) ) | Judge, presiding. |

**ORDER**

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Walker and Coghlan concurred in the judgment.

¶ 1    *Held:* Summary judgment affirmed. Statute of limitations defense failed where plaintiff's fourth amended complaint related to the original complaint because the allegations relied on the same fact and transactions as the original complaint. Defendant violated the Illinois Securities Act by failing to disclose a material fact and thus, positive proof of reliance was not a loss.

¶ 2    Charles P. Thomas, a professional football player, paid D1 Sports Holdings, LLC $200,000 to invest in an Illinois limited liability company that would operate a gym in Chicago. About a year later, after learning that the limited liability company had not found a location for the gym,

Thomas sought to withdraw from the transaction. Sports Holding refused. The Secretary of State involuntarily dissolved the limited liability company.

¶ 3        Thomas sued. Sports Holdings appeals from a partial summary judgment in favor of Thomas on his Illinois Securities Act claim, the return of the $200,000, and the award of over $295,000 in attorney's fees and statutory interest.

¶ 4        We affirm. Sports Holding violated the Illinois Securities Act by its failure to disclose a material fact to Thomas, namely, that the limited liability company did not exist when he entered into the investment.

¶ 5                                     Background

¶ 6        Sports Holding, a limited liability company, forms companies to operate gyms across the country. In April 2014, a representative of Sports Holding approached Thomas, a professional football player, about investing in D1/CAC D1/CAC West Loop Sports Training of Chicago, LLC ("D1 Chicago"), which would operate a gym in Chicago. The next month, the parties entered into the Unit Purchase Agreement with Thomas purchasing from Sports Holding 200 membership units in D1 Chicago for $200,000.

¶ 7        The Unit Purchase Agreement had blank lines for the dates of the filing of the Articles of Organization and the creation of the Operating Agreement. Thomas' representative asked Sports Holding about the blank lines. Sports Holding told him that they would add the dates later. The Agreement provided that on execution, Sports Holding would amend the Operating Agreement to reflect Thomas' interest. D1 Chicago's Articles of Organization were filed five months later, in October 2014, and the Operating Agreement was dated August 6, 2014.

¶ 8        By October 2015, D1 Chicago had not found a suitable gym location, so Thomas wanted out. Sports Holding refused. Then, on April 8, 2016, the Illinois Secretary of State involuntarily dissolved D1 Chicago. Thomas sued Sports Holding on June 22, 2016.

¶ 9        Thomas's fourth amended complaint, filed on May 11, 2018, asserts claims for fraud and, for the first time, violation of the Illinois Securities Act, 815 ILCS 5/12 (West 2018). Sports Holding's answer asserted that the Act's statute of limitations barred the claim.

¶ 10        Thomas moved for summary judgment. He claimed that since Sports Holding had not created D1 Chicago when the parties signed the Unit Purchase Agreement, Sports Holding had nothing to sell him. The trial court granted summary judgment, reasoning Sports Holding purported to sell something that did not yet exist, a fact a reasonable investor would consider material. The trial court granted Thomas recission and ordered Sports Holding to return his investment. Thomas petitioned for attorney's fees and statutory interest, which the Act authorizes. After a hearing, the trial court awarded attorney's fees and statutory interest.

¶ 11                                                Analysis

¶ 12                                        Standard of Review

¶ 13        We review the trial court's grant of summary judgment *de novo*. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128.

¶ 14                                        *Statute of Limitations*

¶ 15        The parties signed the Agreement on May 6, 2014; Thomas filed his fourth amended complaint on May 11, 2018, adding a claim under the Act.

¶ 16        The Act contains a three-year statute of limitations. 815 ILCS 5.13(D) (West 2018). Section 2-616(b) of the Illinois Code of Civil Procedure treats a cause of action in an amended pleading as relating to the original pleading when the new claim arises from the same transaction

or occurrence as the original pleading. 735 ILCS 5/2-616(b) (West 2018). Courts construe the requirements of Section 2-616(b) liberally to encourage resolution on the merits. *Lewandoski v. Jelinski*, 401 Ill. App. 3d 893, 898 (2010).

¶ 17        The Illinois Supreme Court has adopted the "sufficiently close" test to determine whether a new claim relates back. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 359 (2008). A claim does not relate back where: (i) a significant amount of time has elapsed between the original complaint and new material facts in the amended complaint; (ii) the material facts in the original and amended complaint differ in character; or (iii) the material facts in the original and amended complaint lead to arguably different injuries. *Id.*

¶ 18        Sports Holding contends that nothing in the original complaint refers to a claim under the Act or that the fraud turned on D1 Chicago's status as a limited liability company. On the other hand, Thomas maintains that his fourth amended complaint relies on the same facts and the same transactions as the original complaint, including fraud and misrepresentation in inducing him to invest and his $200,000 payment for membership units.

¶ 19        Sports Holding's argument does not address the "sufficiently close" test for relation back. Under the doctrine, a claimant may add alternative legal theories to already plead facts. *Lewandowski v. Jelinski*, 401 Ill. App. 3d 893, 898 (2010). Nor does Sports Holding's argument fit any of the three factors announced in *Porter*. See, *infra*, ¶ 16. As to the first factor, the facts in the original complaint and the amended complaint are interrelated as each stems from the same transaction. In addition, the character of the facts remains the same; both complaints alleged fraud and sought recession. Finally, the injury remains the same, his loss of $200,000.

¶ 20        Courts look at the entire record in deciding whether an amendment relates back. *Id.* at 360. Sports Holding argues that "in no way [were they] on notice" that Thomas would assert a Securities

Act claim. But, Sports Holding's contention misses the mark. Sports Holding had notice of all material facts forming the basis of that claim because the original complaint alleges that Sports Holding made misrepresentations and misleading statements regarding D1 Chicago.

¶ 21   We affirm summary judgment on the statute of limitations defense.

¶ 22   *Illinois Securities Act*

¶ 23   Section 12 of the Illinois Securities Act creates private causes of action arising from fraud or misrepresentation in the sale of securities. 815 ILCS 5/12 (F), (G) (West 2018). Under the Act, a plaintiff must prove that the defendant (i) made a misstatement or omission, (ii) of material fact, (iii) in connection with the purchase or sale of securities, (iv) on which the plaintiff reasonably relied. *Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450, 455 (2004). Significantly, the Illinois Securities Act, unlike the federal securities law, does not incorporate the element of intent or knowledge of the wrongdoing. *Foster v. Alex*, 213 Ill. App. 3d 1001, 1005 (1991). The Act intends to be paternalistic and liberally constructed to protect the public from deceit in the selling of securities. *Carpenter v. Exelon Enterprises Co., LLC*, 399 Ill. App. 3d 330, 334 (2010). Illinois courts may consider federal cases examining the Federal Securities Act in interpreting the Illinois Securities Act. *See Mokena Community Park District v. Romanek*, 2020 IL App (3d) 180336, ¶ 13.

¶ 24   *Materiality*

¶ 25   Materiality is an objective concept. *Omnicare, Inc., v. Laborers District Construction Industry Pension Fund*, 575 U.S. 175, 186 (2015). We look at whether a reasonable and prudent investor, not Thomas, would attach importance to the fact in determining their choice of action and if the fact would alter the total mix of information available to them. *Platinum Partners Value Arbitrage Fund, Limited Partnership v. Chicago Board Options Exchange*, 2012 IL App (1st) 112903, ¶ 25.

¶ 26    The parties state the issue in different ways. Sports Holding maintains the case turns on (i) whether they misled Thomas about the status of D1 Chicago and (ii) whether this would have impacted Thomas's decision to invest. Sports Holding seizes on the entire context of the transaction: Thomas knew that D1 Chicago was a startup venture in the preliminary steps of setting up the business. Sports Holding argues that a question of fact exists as to whether the filing of the Articles of Organization would have been material to the decision to invest, characterizing this as a "technical or administrative" matter. In addition. Sports Holding contends that the trial court failed to explain why D1 Chicago's status as an LLC was "without dispute, facts that a reasonable investor would find important." According to Sports Holding, they treated Thomas as an owner and continued developing their business with him. Further, whether the Articles of Organization had been filed had no impact on Thomas's decision to invest.

¶ 27    The materiality test looks at the likelihood the omitted fact would have altered the mix of information available in making the investment decision. *See Pommer v. Medtest Corp.*, 961 F.2d 620, 623 (7th Cir. 1992). At the time of the investment, Sports Holding was selling nonexistent units in a nonexistent entity, facts uncontested by Sports Holding. Also, Sports Holding's argument gives short shrift to what a reasonable and prudent investor would find significant, focusing instead on Thomas's expectations, an irrelevancy. And, a materially false statement remains so even if it later becomes true. *Id.* That D1 Chicago eventually became an LLC does not affect the determination of materiality.

¶ 28    The trial court relied on two federal securities cases. *SEC v. Jakubowski*, 150 F.3d 675 (7th Cir. 1998), *Hollerich v. Robert C. Acri*, 259 F.Supp.3d 806 (N.D. Ill. 2017). In both cases, the court found summary judgment appropriate on the issue of materiality. While Sports Holding argues that the fact-finder should determine materiality, these cases illustrate that when the

omission concerns facts central to the transaction, materiality can be present as a matter of law. At the sale of units, Sports Holding knew that there was no D1 Chicago and no units changed hands, and the investor had no inkling of either.

¶ 29                                                                *Causation*

¶ 30        Under the Act, a plaintiff needs to establish "transaction causation" and not "loss causation." *Lucas v. Downtown Greenville Investors*, 284 Ill. App. 3d 37, 52 (1996). The court in *Lucas* explained that the Act's statutory scheme contains no requirement that a plaintiff proves the defendant's conduct caused the financial loss. *Id*. Thus, Thomas does not need to demonstrate that Sports Holding's omissions or misrepresentations caused financial loss, only that it caused him to enter the transaction. Nevertheless, according to Sports Holding, the level of causation required in Illinois is ambiguous, and a fact-finder could find D1 Chicago's LLC status not connected to the loss of Thomas's investment, citing *Tirapelli v. Advanced Equities, Inc.,* 351 Ill. App. 3d 450 (2004). But, *Tirapelli* does not even discuss proximate cause.

¶ 31                                                           *Reasonable Reliance*

¶ 32        Finally, Sports Holding contends a jury should decide the issue of reasonable reliance. But, where the omitted fact is material, "positive proof of reliance is not a prerequisite to recovery." *Grossman v. Waste Management, Inc.*, 589 F. Supp. 395, 400 (N.D. Ill. 1984) (citing *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972)). Given the importance of the material omissions, which we have addressed, reasonable reliance has been satisfied. Additionally, Sports Holding conceded that Thomas relied on the Unit Purchase Agreement before the trial court, further undercutting its argument.

¶ 33        Affirmed.